IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WANDA MCENTIRE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 24-0175-MU |
| | ) |
| FRANK J. BISIGNANO, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Wanda McEntire brings this action, pursuant to 42 U.S.C. §§ 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 10 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 11. Upon consideration of the

---

[1] Frank J. Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank J. Bisignano is substituted in lieu of Martin O'Malley as the defendant in this action.

administrative record, McEntire's brief, the Commissioner's brief, and McEntire's reply brief, the Commissioner's decision denying benefits should be affirmed.[2]

## I.  PROCEDURAL HISTORY

McEntire applied for SSI, under Title XVI of the Act, 42 U.S.C. §§ 1381-1383d, on January 20, 2020, alleging disability beginning on November 21, 2018. (PageID. 216-33). Her application was denied at the initial level of administrative review on April 16, 2020, and upon reconsideration on September 9, 2022. (PageID. 92-113). On or about September 22, 2022, McEntire requested a hearing by an Administrative Law Judge (ALJ). (PageID. 249-50). McEntire appeared at a telephonic hearing before the ALJ on February 28, 2023. (PageID. 67-91). On September 26, 2023, the ALJ issued an unfavorable decision finding that McEntire was not under a disability during the applicable time period. (PageID. 43-58). McEntire appealed the ALJ's decision to the Appeals Council, and, on April 11, 2024, the Appeals Council denied her request for review of the ALJ's decision, which rendered the ALJ's decision the final decision of the Commissioner. (PageID. 34-38).

After exhausting her administrative remedies, McEntire sought judicial review in this Court, pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed an answer and the social security transcript on July 29, 2024. (Docs. 13, 14). Both parties filed briefs setting forth their respective positions. (Docs. 15, 16). The parties waived oral argument. (Docs. 18, 19).

---

[2] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. See Doc. 10. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

2

## II.  CLAIMS ON APPEAL

McEntire makes the following claims on appeal:

1) The ALJ erred by failing to adequately explain the basis of his non-exertional limitation findings at step three and by not incorporating additional non-exertional limitations in Plaintiff's RFC; and

2) The ALJ erred by creating an RFC that failed to account for the moderate limitations in concentration, persistence, and pace that were set forth in the ALJ's findings at step three.

(Doc. 15 at p. 7; PageID. 462).

## III. BACKGROUND FACTS

McEntire, who was born on April 9, 1964, was 55 years old at the time she filed her claim for benefits. (PageID. 73; 216). McEntire initially alleged disability due to migraines, ankle issues, lower back problem, blood pressure problem, and osteoarthritis in wrists and hands. (PageID. 255). She stated in her disability report that she stopped working on January 1, 2018 because of her conditions. (PageID. 270). In her Adult Function Report, which was completed on August 24, 2020, she stated that her conditions limit her ability to work because she has a hard time with her hands and can't hold anything for a long period of item. (PageID. 298). She further stated that she has trouble holding a book and the television remote. (PageID. 302). She also stated that she can't stand, walk, or sit for long. (PageID. 303). On social activities, she stated that she spends time with her friend, talks to her kids, and goes to church and to town (and can do so unaccompanied) and that she doesn't have any problems getting along with others. (PageID. 302-03). Additionally, she stated that she does not have issues with

3

paying attention, finishing what she starts, following written and oral instructions, getting along with authority figures, or handling stress or changes in routine. (PageID. 303-04).

At the February 28, 2023 hearing before the ALJ, McEntire testified that she is unable to work because she has trouble standing for more than an hour to an hour and a half and needs to rest after doing so for about thirty minutes and she indicated that she sometimes has trouble sitting in certain chairs due to her height and has some limitations in lifting, although she can lift a household vacuum cleaner. (PageID. 78-81). McEntire testified that she has a high school degree. (PageID. 73). In the fifteen years prior to filing her claim, she worked as an office cleaner and as a seamstress sewing tags onto uniform pants. (PageID. 74-76). She was terminated from her job as an office cleaner in approximately 2010 and looked for work but was unable to find other employment. (PageID. 74-75).  She testified at the hearing that she can do personal care, like brushing her teeth, washing her face, fixing her hair, getting dressed, and buttoning buttons; can do household chores, like laundry, cooking, sweeping and vacuuming; and can walk around her yard. (PageID. 80-82). She is able to drive but does not have a car. (PageID. 50). She spends time watching television. (PageID. 82).

## IV. ALJ'S DECISION

After conducting a hearing, the ALJ determined that McEntire was not under a disability at any time from January 20, 2020, the date the application was filed, through the date of the decision, September 26, 2023, and thus, was not entitled to benefits. (PageID.54). In applying the five-step sequential evaluation to McEntire's claim, at step one, the ALJ found that McEntire had not engaged in substantial gainful activity ("SGA") since her application date, January 20, 2020. (PageID. 45). Therefore, he proceeded to

an evaluation of steps two and three. The ALJ found that McEntire had the following severe impairments: depressive disorder, diverticulitis, and low back problems, but that she did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (PageID. 45-47). After considering the entire record, the ALJ concluded that McEntire has the residual functional capacity ("RFC") to perform medium work, except that she can never climb ladders, ropes, or scaffolds or be exposed to hazards, such as dangerous machinery or unprotected heights; she is limited to simple routine and repetitive tasks and simple work related decisions; and that her changes in the workplace are limited to normal workplace changes. (PageID. 47-52). After setting forth her RFC, the ALJ determined that McEntire was unable to perform any past relevant work. (PageID. 52). The ALJ, however, found that, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that McEntire can perform. (PageID. 52-54). Accordingly, the ALJ found that McEntire was not disabled within the meaning of the Act from January 20, 2020, the date she filed her application, through the date of the decision, which was September 26, 2023. (PageID. 54).

## V. STANDARD OF REVIEW

Eligibility for SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 1382(a)(1)-(2). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the

claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence

6

favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

## VI. DISCUSSION

McEntire claims that the ALJ's step three findings and RFC determination were not supported by substantial evidence. A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. The RFC determination represents **the most, not the least**, a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2 (emphasis added). The RFC assessment is based on "all of the relevant medical **and other evidence**." 20 C.F.R. § 404.1545(a)(3). In assessing a claimant's RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments, i.e., those that are demonstrable by objective medical evidence. SSR 96-8p, 1996 WL 374184, at *2. Similarly, if the evidence does not show a limitation or

restriction of a specific functional capacity, the ALJ should consider the claimant to have no limitation with respect to that functional capacity. Id. at *3.

The ultimate responsibility for determining a claimant's RFC, in light of the evidence presented, is reserved to the ALJ, not to the claimant's physicians or other experts. *See* 20 C.F.R. § 404.1546. "[T]he ALJ will evaluate a [physician's] statement [concerning a claimant's capabilities] in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007); *see also Pritchett v. Colvin*, Civ. A. No. 12-0768-M, 2013 WL 3894960, at *5 (S.D. Ala. July 29, 2013) (holding that "the ALJ is responsible for determining a claimant's RFC"). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Jones v. Colvin*, CA 14-00247-C, 2015 WL 5737156, at *23 (S.D. Ala. Sept. 30, 2015) (quoting *Ricks v. Astrue*, No. 3:10-cv-975-TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) (internal quotation marks and citations omitted)).

A. <u>**ALJ Findings on Non-exertional Limitations at Step Three**</u>

McEntire argues that the ALJ erred by failing to adequately explain the basis of his non-exertional limitation findings at step three. Specifically, McEntire claims that the ALJ did not adequately support his finding that she had no limitation in understanding, remembering, or applying information, no limitation in social interaction, only a moderate limitation in concentrating, persisting, or maintaining pace, and a mild limitation in adapting or managing herself. (Doc. 14 at pp. 7-8; PageID. 462-63).

In evaluating the "paragraph B" criteria, the ALJ stated:

> In understanding, remembering, or applying information, the claimant has no limitation. In interacting with others, the claimant has no limitation. With regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitation. As for adapting or managing oneself, the claimant has mild limitation. The evidentiary bases for the foregoing findings are discussed below at Finding #10.
>
> Specifically, in report of activities of daily living, the claimant reported ability to cook and prepare meals; complete her own self-care; complete housekeeping and laundry tasks, with only mild difficulty getting clothes out of the washing machine; engage in shopping, but limited in time by walking limitations; and driving, but with difficulty. (Exh.4F, p.3).
>
> While this report reveals fairly normal and independent activities of daily living, the claimant's depression screen at the Mercy Clinic, showing moderate signs of depression would indicate that more likely than not, the claimant would have some moderate limitations in ability to concentrate due to interference from the claimant's consistently reported physical pain and her family stressors. Moreover, the claimant has not been very proactive in seeking low cost or no cost care over the years, failing to present evidence of even emergency department assessment of her conditions, which indicates at least mild limitation of the claimant in managing her self-care. Thus, affording the claimant the greatest signs consistent with disability, the undersigned finds the claimant with moderate limitations in concentration and mild limitation in managing oneself, based on the consistency of her reports of depression due to family stressors and perceptions of musculoskeletal pain.

(PageID. 46-47). Having reviewed the entire transcript, including the sparse medical records, Plaintiff's initial application for SSI, Plaintiff's Function Report, and Plaintiff's testimony at the hearing before the ALJ, and considering the applicable law, the Court finds that the ALJ has properly supported his findings at step three and that these

findings are supported by substantial evidence. *See, e.g, Raper v. Comm'r of Soc. Sec.,* 89 F.4th 1261, 1275-76 (11th Cir. 2024) (noting that "it is proper to read the ALJ's decision as a whole, and ... it would be a needless formality to have the ALJ repeat substantially similar factual analyses") (internal quotation marks and citation omitted); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) ("We have also declined to remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.") (citation omitted). Indeed, the Court finds that, based upon the evidence, these findings were generous. *See, e.g.,* Psychiatric Review Technique at PageID.109.

**B. ALJ's RFC Findings on Non-Exertional Limitations**

McEntire also contends that the ALJ erred by not including additional or different non-exertional limits in his RFC finding. Specifically, McEntire argues that, although the ALJ found that Plaintiff had moderate limitations in concentration, persistence, and pace and mild limitations in adapting and managing herself at stage three, the RFC does not contain "any limitations accounting for moderate limitations in concentration, persistence, and pace." (Doc. 15, PageID. 465).

With regard to Plaintiff's mental impairment and limitations related thereto, the ALJ stated, in relevant part:

> The medical evidence of record reveals the claimant was also seeking a consultation for behavioral health needs. On presentation in late 2019, she had euthymic, but tearful, mood. Mental functional assessment shows the claimant was well oriented, cooperative, talkative, and open to receiving behavioral health services. The claimant showed a moderate level of depression, medium level of somatic symptoms, and moderate level of anxiety, based on surveys

that the claimant completed. (Exh.3F, p.26 and 22-25). She admitted her elevated depressive and anxiety symptoms were related to her adult children being on methamphetamines, resulting in Department of Family and Children Services (DFCS) removing her grandchild from her child's custody. Behavioral health services referred the claimant for disability legal services and helped with issues the claimant was facing to attend a mammogram appointment. (Exh.3F, p.21, 26).

\* \* \*

The claimant presented for a consultative medical examination in [sic] Dr. Elizabeth Craig, DO in internal medicine in June 2023. The consultative examiner noted the claimant complained of migraines, ankle issues, lower back problems, blood pressure problem, and osteoarthritis, but noted that the record failed to show prior diagnoses of these impairments. (Exh.4F, p.2). The claimant reported that she had not worked for the past 8 years, having last worked at a fast food restaurant. (Exh.4F, p.3). The claimant had not seen a physician for 6 years, prior to starting in late 2019 with the Mercy Clinic. (Exh.4F, p.3).

\* \* \*

As for activities of daily living, the claimant reported ability to cook and prepare meals; complete her own self-care; complete housekeeping and laundry tasks, with only mild difficulty getting clothes out of the washing machine; shopping, but limited in time by walking limitations; and driving, but with difficulty. (Exh.4F, p.3).

\* \* \*

On reconsideration, Dr. Patrice Solomon, PhD offered an opinion that the claimant's depression and non-specific anxiety were both non-severe, based on normal Mental Status Examination at the Mercy Clinic, which is partially persuasive, finding the claimant with no to only mild limitations in the mental functionality, the "B criteria." (Exh.3A, p.9).

However, the undersigned finds the record provides enough information to find that the claimant would be more likely than not to have at least moderate limitations in ability to

>concentrate, persist and keep pace, due to distractions from her depression over her own physical pain and her family stressors.  Thus, the undersigned, in affording the claimant the benefit of doubt, finds the claimant's depression is a severe impairment, based on her labile presentation on one examination, her consistent reports of depression in the few medical records from Mercy Clinic, and on the depression screening that showed moderate signs of depression/anxiety. (Exh.3A). Thus, the residual functional capacity provides limitations to simple, routine, repetitive tasks and simple work-related decision, ***based on possible distraction of the claimant due to her depressive symptoms,*** exacerbated by her lack of finances for regular mental and physical treatment and her reported family stressors. Dr. Alicia Blando, MD, on reconsideration, opined insufficient evidence on which to base an assessment of the claimant's impairments because the claimant had not presented for medical consultative examination. Thus, this report from Dr. Blando provides on [sic] opinion to assess.
>
>Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the above discussed signs on evaluation at the Mercy Clinic of some moderate depression of the claimant in surveys and the claimant's reports of bases of her depression. Thus the medical evidence of record provides for simple, routine, repetitive tasks, simple workplace decision-making and no more than normal changes in the work environment to address the claimant's stressor related depression symptoms.  The residual functional capacity also provides for limitation to medium exertional work and no climbing of ladders, ropes, or scaffolds, in consideration of the claimant's reports of back and some joint pain; although not diagnosed as osteoarthritis, Degenerative Joint Disease, or Degenerative Disc Disease, due to little medical treatment of the claimant from any provider.

 (Doc. 14; PageID. 49-52).

While acknowledging that the ALJ found that Plaintiff was "limited to simple routine and repetitive tasks and simple work related changes," she claims that this limitation does not correlate with her inability to sustain concentration, persist at tasks,

12

or maintain pace. However, Eleventh Circuit law and the evidence of record clearly support the ALJ's conclusion in this regard. *See, e.g.*, *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) (finding that "[b]ecause the medical evidence showed that [the claimant] could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's limiting of [the claimant's RFC] to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace"); *Lee v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 539, 541 (11th Cir. 2014) ("The ALJ adequately accounted for all of Lee's impairments in the hypothetical posed to the VE because he implicitly accounted for Lee's limitations in concentration, persistence, and pace when he imposed a limitation of simple work."); *see also Reeves v. Kijakazi*, Case No. 1:21-cv-10-CWB, 2023 WL 6276344, at *6 (M.D. Ala. Sept. 26, 2023) ("'[T]he Eleventh Circuit has held that a limitation to 'simple work' or something similar sufficiently accounts for moderate difficulties in concentration, persistence, and pace if the medical evidence shows the claimant can perform simple, routine work.'" (quoting *Jackson v. Kijakazi*, No. 1:20-CV-00039, 2021 WL 4472597 at *3 (M.D. Ala. Sept. 29, 2021) (citing three cases confirming the same)). The ALJ made the RFC finding after expressly stating that the "paragraph B" ratings were accounted for in the RFC, and the limitations in the RFC are the type that adequately account for a moderate rating in the "paragraph B" area. (Doc. 14; PageID. 47); s*ee Pritchett v. Saul*, No. 19-00652-B, 2021 WL 9477085, at *10-11 (S.D. Ala. Mar. 31, 2021) (rejecting argument that the RFC did not account for a moderate rating in concentration, persistence, and pace "because the ALJ made clear that the RFC reflects the degree of limitation found in his analysis of the paragraph B criteria and adequately supported that

13

conclusion in his detailed discussion of the mental health evidence"). The ALJ specifically stated that he gave McEntire "the benefit of doubt" in finding her depression to be a severe impairment and limited her "to simple, routine, repetitive tasks and simple work-related decision, based on *possible* distraction ... due to her depressive symptoms." (Doc. 14, PageID. 51) (emphasis added).

Moreover, the Court takes notes that the medical evidence of depression relied upon by the ALJ came from examination and assessment at Mercy Health Clinic on September 30, 2019 and September 9, 2020. (PageID. 429-32). However, McEntire testified at the hearing before the ALJ on February 28, 2023, when her attorney asked her: "Are you still having any issues with depression?":

> Not as bad because where I'm living at, it's very laid back I'd guess you'd say. And I'm very comfortable here so I don't have as much where I was living here[.] It [sic] was a little maybe irritable sometimes.

(PageID. 83). Although McEntire testified about how other physical issues affected her ability to work, she did not attribute any difficulties in working to her depression.

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Chester*, 792 F.2d at 131. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. Having reviewed the ALJ's decision and the transcript and considered the arguments made by McEntire, the Court finds that the ALJ's RFC determination is supported by substantial evidence and based on proper legal standards, and therefore, the Commissioner's determination is due to be affirmed on this issue. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

## VII. **CONCLUSION**

Based on the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff Wanda McEntire benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **25th** day of **May, 2025**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**